IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 08-100-GMS |
| | : | |
| LEVAN MORALES, | : | |
| | : | |
| Defendant. | : | |

### DEFENDANT'S MOTION TO SUPPRESS
### PHYSICAL EVIDENCE AND STATEMENTS

Defendant, Levan Morales, by and through his undersigned counsel, Keir Bradford, Assistant Federal Public Defender for the District of Delaware, hereby moves this court pursuant to Federal Rule of Criminal Procedure (12)(b)(3) and the Fourth Amendment of the United States Constitution, for an Order suppressing the Government's use of any and all evidence obtained as a result of the unlawful search and seizure of Mr. Morales on the night of July 13, 2008.

In support of this motion the defense submits as follows:[1]

1.        On June 13, 2008, Officer Rodriguez and Detective Pfaf were traveling on the 2700 block of Claymont Street. The officers noticed Levan Morales, with his hands around his waist area, exit a lawfully stopped car. After exiting the vehicle, Mr. Morales walked to the front of the vehicle, and proceeded to walk away from the parked car.

---

[1]The facts contained in this motion were taken from the police reports prepared in connection with this case. Although Mr. Morales cites these facts in his motion, he does not concede that the events transpired as stated by the officers in this case. Mr. Morales submits that an Evidentiary Hearing is needed to further develop facts, which are determinative of this motion.

2.      Mr. Morales had his hands in front of him while walking.  During this period, Mr. Morales was also looking back at the two officers who were patrolling the area.  At this point, Officer Rodriguez decided to stop Mr. Morales and then gave him a verbal command to stop walking.

3.      Mr. Morales, however, continued to walk away from the officers.  Officer Rodriguez then ordered Mr. Morales to show his hands, however he did not comply.  Officer Rodriguez claims that Mr. Morales' body motion was in a manner that he was attempting to remove something from his waist area.

4.      Officer Rodriguez proceeded to shoot Mr. Morales with his taser gun.  Mr. Morales fell to the ground, fracturing bones in his face.  Officer Rodriguez then handcuffed Mr. Morales and performed a search.  During the search, a gun was found on Mr. Morales.  Mr. Morales was then taken to the hospital where he was treated for a facial fracture due to his fall resulting from the officer's use of his taser gun.

5.      Upon information and belief, the officers seized Mr. Morales without reasonable suspicion.  The defense intends to produce evidence that will contest the assertions of the officers.[2] It is Mr. Morales' position that he in fact never heard commands from the officers, and instead only realized officers were attempting to seize him after he was shot with a taser gun.  Finally, Mr. Morales submits that he never made furtive hand movements toward his waistband.

6.      Levan Morales respectfully asserts that his motion for suppression of all evidence obtained as a result of his unlawful seizure be granted.  The officers seized Mr. Morales without reasonable suspicion that criminal activity was afoot.  The record establishes that Mr. Morales exited a lawfully parked vehicle with his hands around his waist and was immediately ordered to show his

---

[2] Upon information and belief Mr. Morales and the other occupants of the vehicle were targeted under the Wilmington Police Department "Jump Out" Policy.

hands. Mr. Morales argues that the police lacked any proper basis to detain and/or arrest him, however, the officers proceeded to shoot Mr. Morales with a taser gun and conduct a search of his person. As such, all evidence stemming from the unlawful seizure of Mr. Morales must be suppressed. See Wong Sun v. United States, 371 U.S. 471 (1963).

7.      The Fourth Amendment protects "the right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." See U.S. CONST. Amend. IV. Police have constitutional authority to conduct a limited investigatory stop, however, if an officer has a reasonable suspicion that criminal activity may be afoot. See United States v. Sokolow, 49 U.S. 1, 7 (1989). A mere hunch or inchoate of unparticularized suspicion cannot justify a stop and frisk under Terry. United States v. Brown, 159 F.3d 147, 159 (3d Cir. 1998). Instead, to justify a Terry stop, the officer's suspicion must be based upon specific and articulable facts which, taken together with all rational inferences from those facts, reasonably suggest that a suspect has been involved in criminal activity. See United States v. McCray, 148 F.Supp.2d 379 (D. Del. 2001)(citing: Terry v. Ohio, 392 U.S. 1, 30 (1968)).

8.      The Supreme Court has repeatedly recognized that reasonable suspicion may be the result of any combination of factors including: specialized knowledge and investigative inferences, personal observation of suspicious behavior, and information from sources that have proven to be reliable. See U.S. v. Nelson, 284 F.3d 472 (3d. Cir 2002)(citations omitted). The Supreme Court in Florida v. J.L., 529 U.S. 266 (2000) made clear that there is no firearm exception to the reasonable suspicion requirement when conducting a Terry stop. See Id.

9.      In United States v. Ubiles, 224 F.3d 213 (3d. Cir 2000) the Third Circuit found a Terry stop unlawful where police, who performed a Terry search of the defendant, acted solely on a known informant's tip that the defendant was carrying a gun. The Ubiles Court held that the

officers had no reason to believe that the defendant was involved in criminal activity because it is not necessarily a crime to possess a firearm in the Virgin Islands.  See Id. at 217 (analogizing the situation to officer's being informed that the defendant possessed a wallet.  See Id. at 218.  Although the wallet may have revealed counterfeit bills-the possession of which is a crime under United States law, the officer would have no justification to stop the defendant based merely on information that he possessed a wallet, and the seized bills would have to be suppressed. Id.)

10.    Analogous to the situation in Ubiles, in Delaware it is not a crime to carry a concealed weapon with a permit.  11 Del. C.§ 1441(j).  Further, the officers in the present case did not act on a tip by a known informant nor did they notice a bulge in his pants, instead they acted solely on a hunch that Mr. Morales had a firearm because of the way he was standing.  The officer's were speculating as to whether Mr. Morales had a gun, and more importantly the officers did not know whether Mr. Morales had a permit to carry a concealed weapon, thus nullifying the officers hunch of illegal activity.

11.    The Supreme Court has held that when police officers approach citizens during a consensual encounter, refusal to cooperate, without more does not furnish the minimal level of objective justification needed for a detention or seizure.  McCray, 148 F.Supp 2d at 389 (citing: Florida v. Bostwick 501 U.S. 429, 437 (1991)) See also, Florida v. Royer, 460 U.S. 491 (1983)(when an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore police and go about his business Id.).

12.    Assuming that Mr. Morales refused to put up his hands as instructed by the officers, this would not amount to reasonable suspicion.  First, the officers did not know whether Mr. Morales actually had a firearm, instead they merely acted on a hunch due to the way in which Mr. Morales was standing.  Second, the Delaware legislature has not enacted a criminal statue prohibiting a concealed

gun possession.  Third, although Mr. Morales allegedly, did not comply with the officer's orders, Mr. Morales had every right to ignore the officer's orders and go about his business.  See Royer 460 U.S. 491.  Finally, although the officers allegedly discovered that Mr. Morales did in fact have a concealed firearm and is a convicted felon, reasonableness of official suspicion must be measured by what the officers knew before they conducted their search.  Florida v. J.L., 529 U.S. 266 (2000).

13.    The Government will likely rely on United States v. Moorefield 111 F.3d 10 (3d Cir. 1997).  The Court in Moorefield held that in the context of a traffic stop, a defendants furtive hand movements and refusal to obey officers constituted suspicious behavior thus allowing a Terry search.  See Id. at 13.  The Moorefield court noted that traffic stops are dangerous encounters that result in assaults and murders of police officers.  See Id.

14.    In the present case, there was no such traffic stop.  Instead Mr. Morales exited a lawfully parked vehicle and officers immediately ordered him to raise his hands.  Unlike Moorefield, the present case did not take place in the context of a traffic stop and Mr. Morales was not legally stopped prior to commands from the police officers.  Because Mr. Morales was not lawfully detained prior to police orders, the facts in the present case are more closely analogous to Ubiles than to Moorefield.  Thus suppression is warranted.

15.    In the case before the Court, Mr. Morales exited a lawfully parked car with his hands around his waist.  Officer's ordered Mr. Morales to show his hands to which Mr. Morales lawfully ignored the officer's orders and went about his business.  The Officers then shot Mr. Morales with a taser gun and proceeded to arrest him and search his person.  Mr. Morales submits that this search and seizure was conducted without reasonable suspicion and therefore was unlawful.  As such, Mr. Morales asserts that all evidence obtained from the illegal search must be suppressed under Wong Sun and its progeny.

**WHEREFORE**, Mr. Morales respectfully requests that this Court conduct a hearing to further develop the facts related to this motion and enter an Order suppressing the government's use of any and all evidence illegally obtained by law enforcement officials on or about July 13, 2008.

Respectfully submitted,


 /s/ Keir Bradford
Keir Bradford, Esquire
Assistant Federal Public Defender
One Customs House
704 King Street, Suite 110
Wilmington, Delaware  19801
(302) 573-6010
ecf_de@msn.com

Attorney for Defendant Levan Morales

Dated:  July 31, 2008

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 08-100-GMS |
| | : | |
| LEVAN MORALES, | : | |
| | : | |
| Defendant. | : | |

## **ORDER**

The Court having considered Defendant Morales' Motion to Suppress Physical Evidence and Statements and good cause having been shown therefore;

IT IS HEREBY ORDERED this _____ day of _____, 2008, that any physical evidence seized and any statements made by Mr. Morales on or about July 13, 2008, shall be suppressed.

_____
The Honorable Gregory M. Sleet
Chief Judge, United States District Court